WESTERN UNION TELEGRAPH COMPANY *v.* HINSON.

4-4039

Opinion delivered November 11, 1935.

*Francis R. Stark* and *Trimble, Trimble & McCrary,* for appellants.

*W. P. Beard, L. B. Reed, Jr.,* and *L. R. Harrell,* for appellee.

BAKER, J. Sidney Hinson sued the Western Union Telegraph Company and Lee Roberts for an injury that he suffered on November 20, 1934, in the city of Little Rock. At the time of the injury the plaintiff was attempting to cross Scott Street and was struck by an automobile driven by Lee Roberts, messenger for the Western Union Telegraph Company. Lee Roberts was a young man about twenty-three years of age, had been working for some time for the Western Union Telegraph Company as a messenger, and on this particular occasion was directed by his superior officer or manager of the Western Union Telegraph Company, to go to the Missouri Pacific depot and procure a ticket to be delivered to some one at the Marion Hotel.

Up until some time in October, prior to the date of this injury, Western Union had permitted messenger

boys or employees to use automobiles in the delivery work, but on account of the decrease in business the messenger boys or employees were ordered to refrain from the use of automobiles, but to use bicycles instead. Lee Roberts lived in North Little Rock, drove his own automobile from his home to the Western Union office, where he went on duty about 4:00 P. M., and remained on duty until 12:00 P. M. He was a student in one of the schools in North Little Rock and studied in the Western Union office, when not engaged in some duty or service for the company.

When ordered or directed by the manager to run the errand and procure the ticket, Roberts, in violation of the direct and positive orders of his employer, started upon the errand, driving his own automobile, which had been parked near the Western Union office, and, before he had driven a block, struck Hinson, the appellee, and seriously injured him.

The facts, stated most favorably for the appellee show that Roberts at the time of the injury had driven his car upon the wrong side of the street, or turned his car too shortly in negotiating the corner. Roberts denies this fact, but this disputed fact has been decided against him by the jury, and it is the only material fact about which there is any dispute. The evidence is undisputed that the manager of the Western Union office or the employer, having control of the messenger boys, had given positive and direct instructions and commands forbidding the use of automobiles in the company's business. Roberts' statement is to the effect that this was the first and only time that he had violated that order, but, on account of the fact that it was raining and that he desired to make the trip to the depot as quickly as he could and return to resume his studies, he took the automobile instead of his bicycle, which he had brought to the office in the automobile.

A recovery by judgment was had against both Roberts and the Western Union. There is no question raised on this appeal, except the one of liability of the appellants. Appellants do not suggest that, if liability be de-

termined on this appeal, the amount of the recovery is excessive, but urge only that the trial court should have directed a verdict for the defendants.

From the foregoing facts, which must be treated as undisputed upon this appeal, we are impelled to say that there is no error in the trial of the case as against appellant Roberts. He was not driving at a very fast rate of speed at the time of the injury, but he did cut a corner and drive upon the wrong side of the street, striking the appellee with his car in so doing. He testified he was within five feet of Hinson before he saw him. He was properly held responsible for his negligence. As to him, the judgment herein must be affirmed.

As to appellant, Western Union Telegraph Company, a more serious problem presents itself. In the matter of running the errand, Lee Roberts was acting in the obedience to the directions or positive orders of his superior, and, if this were the entire statement, the doctrine of *respondeat superior* would apply. It is undisputed, however, that, in the performance of this duty in accordance with the command, Lee Roberts, in violation of express orders and instructions, chose a different agency, and much more dangerous one from that which he had been directed to use. He had authority to use a bicycle. He had no authority to use an automobile in making the trip. Therefore, in his choice of the agency with which he performed the service he was directed to do, he was beyond and outside the scope of his authority.

It must be conceded by all that the master has the right to choose the instrumentalities or agencies for the performance of the work or duties required of employees, and it is upon this principle that the master may become liable for his failure to exercise ordinary care in choosing and furnishing a tool or appliance reasonably safe.

This question on appeal is not a new proposition. The same principle has been frequently before the courts for consideration. In the case of *St. Louis, Iron Mountain & Southern Railway Company* v. *Robinson*, 117 Ark. 37, 173 S. W. 822, the facts are so nearly like the ones

under consideration that the announcement of the law there becomes the rule of decision here. In the cited case, a boy made use of a bicycle when sent to call employees to go upon duty. His superior officers, agents of the railroad, knew he was making use of the bicycle, but there was in fact no necessity for the use thereof. He was not authorized to use the same, because the distances over which he had to travel in making these calls were not such as to necessitate the use of that instrumentality in order that he might call employees in due time. He was presumed to go upon foot and make his calls. In the unauthorized use of the bicycle he injured one who, on account of the injury, sued the railroad company. In deciding this case, the court, through the late Mr. Justice KIRBY, said:

"If the service required of the call boy could not have been performed in the time given therefor without the aid of the instrumentality used, the bicycle, it would have occasioned a necessity, and the knowledge by the agent of such use in the performance of the service would have amounted to an implied authorization thereof, making the railroad liable for a negligent injury thereby. But such is not this case, and there was no testimony to warrant the jury in finding that the bicycle was necessarily used in the service of the railway company by its call boy, with the knowledge of its servants of the use and necessity therefor, and consequently no negligence shown in the injury to appellee for which it is required to answer or respond in damages."

The last-mentioned case was cited with approval of the rule announced therein in the case of *Southwestern Bell Telephone Company* v. *Roberts,* 182 Ark. 211, 215, 31 S. W. (2d) 302. Moreover, by distinguishing the Roberts case from the Robinson case above, it emphasized the fact that without the knowledge or direction of the master the servant would not be permitted to select or employ his own agency or means of performance of the duty owing to the master, unless there was the actual necessity for such selection and choice by the servant in order to perform his duties. In such cases, where the

actual necessity existed, a presumption of knowledge and permission would be imputed to the master. Consent, express or implied, will be presumed.

No such condition prevailed in this case. It is violative of principles announced in the Robinson case as more clearly set forth and defined in the Roberts case, in that the servant had a means or instrumentality for use in the performance of his duties, which was authorized by the master, and (2) the instrumentality used was not only expressly forbidden, but (3) was unnecessary.

The following authorities from other jurisdictions may be read with interest: *Hughes* v. *Western Union Telegraph Corporation,* 211 Iowa 1091, 236 N. W. 8; *Kennedy* v. *Union Charcoal & Chemical Company,* 156 Tenn. 666, 4 S. W. (2d) 54, 57 A. L. R. 733.

Appellants have favored us with numerous other appropriate citations which we deem unnecessary to incorporate herein. This line of cases is distinguishable from those founded upon a well-defined principle of law, that the wrongful act of a servant, when acting within the scope of his employment, will render the master liable for consequent damages, although such wrongful act may have been in violation of the express orders of the master. Aside from the right of the master to control the employee and direct him in his activities in the rendition of his service, the master has a right to choose or select the tools, appliances, or agencies which will be used by the servant. If that were not true, the servant, in the exercise of his individual discretion, making his own selection and use of agencies, might, perhaps, not only injure himself in the attempted performance or rendition of his services, but he might also render an inferior service to the master, to his damage and detriment, or probably bring destruction to the master's property, and by such conduct some third party might be injured, for which the master might become liable to the extent of financial ruin.

It must appear from the foregoing that the proposition of liability in cases of this type must be determined from the facts in relation thereto. This is clearly seen

from the citations in the Robinson case and Roberts case above set out.

We think therefore the court erred in not directing a verdict for appellant Western Union Telegraph Company. The case has been fully developed, and no liability has been established against said company.

The judgment is therefore reversed as to appellant, Western Union Telegraph Company, and that part of the cause is dismissed.