Argued and submitted September 26, reversed and remanded October 26, 1988

KELCH et al,
*Appellants,*

*v.*

INDUSTRIAL INDEMNITY COMPANY,
*Respondent.*

(A8609-05679; A46414)

763 P2d 402

Lee A. Hansen, Portland, argued the cause for appellants. With him on the briefs was Brown & Hansen, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent. On the brief were M. Elizabeth Duncan, G. Kevin Kiely, and Schwabe, Williamson & Wyatt, Portland.

Before Warden, Presiding Judge, and Graber and Riggs, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Plaintiffs insureds appeal from the entry of a partial summary judgment in favor of their insurer. We reverse and remand.

Plaintiffs, owners and operators of a retail lumber and hardware business in Sunriver, purchased a businessowners' insurance policy from defendant, providing property and liability protection for the period February 1, 1985, to February 1, 1986. The policy provides, in relevant part:

"EMPLOYEE DISHONESTY

"This policy provides coverage for loss of money and other business personal property by dishonest or fraudulent acts of the named insured's employees for an amount not exceeding the limit of liability shown in the Declarations and subject to the following conditions:

"1.  The limit of the Company's loss shall not exceed the replacement cost thereof at the time of the loss, provided, however, at the option of the insured payment of the cost of replacing securities may be determined by the market value at the time of such settlement.

"* * * * *

"PROPERTY SUBJECT TO LIMITATIONS

"The following property is subject to the limitations described below:

"1.  Valuable papers and records meaning books of account, manuscripts, abstracts, drawings, card index systems and other records * * * are covered for not exceeding the cost of blank books, cards or other blank material plus the cost of labor incurred by the insured for transcribing or copying such records."

In August, 1985, plaintiffs discovered that a temporary bookkeeper had been stealing cash for the preceding two and a half months by preparing two sets of deposit slips, one that reconciled with the daily cash record and another, for the bank, reflecting the smaller amounts actually deposited. Plaintiffs later discovered that invoices, accounts receivable cards and, probably, checks from customers were missing. The bookkeeper was arrested, released on her own recognizance and disappeared.

Plaintiffs filed a claim for the documented cash loss,

which was partially paid by defendant under the employe dishonesty provision. The balance of that claim was ultimately compromised. Plaintiffs hired a Certified Public Accountant to determine the loss resulting from the disappearance of the invoices, accounts receivable cards and customer's checks. The CPA computed the average gross profit ratio for the previous two years and extrapolated the gross sales for 1985. He determined that the 1985 recorded sales fell $40,000 short of that projection. Plaintiffs filed a claim for that shortage. Defendant denied the claim, and plaintiffs filed this action to recover.

The trial court granted defendant's motion for partial summary judgment, holding:

> "Paragraph One of the 'PROPERTY SUBJECT TO LIMITATIONS' section of the insurance policy issued to plaintiffs * * * validly and unambiguously limits the scope of any otherwise existing coverage for loss, theft or destruction of plaintiffs' accounting records, including inventory and accounts receivable records in blank form, plus any labor costs incurred by plaintiffs in transcribing or copying such records."

Plaintiffs argue that the "employee dishonesty" provision, quoted above, is the applicable loss provision. Their position is that their claim is for the lost money represented by the missing documents, not for the actual documents. They interpret the "property subject to limitations" provision as applying only to the documents, not to losses resulting from the loss of the physical documents. They read the provision as protecting the insurer only against the cost of recreating the types of documents listed.

On a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978). The test for interpretation of insurance policies is "what a reasonably intelligent and careful person in the position of the insured would have understood the words of the policy to mean." *State Farm Mutual Auto Ins. Co. v. White,* 60 Or App 666, 672, 655 P2d 599 (1982), *rev den* 294 Or 569. A contract provision is ambiguous "if it is

capable of more than one sensible and reasonable interpretation." *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 317, 696 P2d 1096 (1985), *rev den* 299 Or 314. If a provision in an insurance contract is ambiguous, and there is no other evidence of its meaning, it is strictly construed against the insurer and in favor of extending coverage to the insured. *Shadbolt v. Farmers Insur. Exch.,* 275 Or 407, 551 P2d 478 (1976); *see also United Pacific Ins. v. Truck Ins. Exch.,* 273 Or 283, 541 P2d 448 (1975); *State Farm Mutual Auto Ins. Co. v. White, supra,* 60 Or App at 672.

■      We cannot say that plaintiffs' interpretation of the provision is unreasonable, because the language of the "property subject to limitations" provision appears to refer to physical documents and records rather than to the value they might represent. Because it is susceptible to that interpretation, the provision is ambiguous and, accordingly, must be construed against defendant and in favor of plaintiff. Therefore, we conclude that the "property subject to limitations" provision does not apply to the type of loss that plaintiffs claim and does not limit defendant's liability for the claimed loss.

■      Defendant also contends that plaintiffs have failed to raise any genuine issue of material fact, arguing that they offer no "positive" or "affirmative" proof of "actual" loss arising from the missing documents. It attacks plaintiffs' method of calculating the $40,000 loss figure as "mere conjecture." It also argues that plaintiffs have failed to establish any link between the alleged loss and the bookkeeper that could bring the loss under the provision covering employe dishonesty. We disagree.

On a motion for summary judgment we view the record in the light most favorable to the party opposing the motion and draw all reasonable inferences from the affidavits and depositions against the moving party. *Oregon Bank v. Nautilus Crane & Equip Corp,* 68 Or App 131, 134, 683 P2d 95 (1984)(citing *Stanfield v. Laccoarce,* 288 Or 659, 607 P2d 177 (1980), and *Uihlein v. Albertson's, Inc.,* 282 Or 631, 580 P2d 1014 (1978)). Although plaintiffs' method of valuation may not be the most accurate way to prove a loss, it raises a triable issue of fact, because the policy does not specify a method of

valuing loss. We also agree with plaintiffs that it is not unreasonable to infer that the bookkeeper, whom defendant has acknowledged to be a dishonest employe by paying the cash loss, destroyed the missing invoices to cover the theft and cashing of checks. Accordingly, we conclude that a genuine issue of fact exists and hold that the trial court erred in granting defendant's motion for partial summary judgment.

Reversed and remanded.